GRIFFIN v. MARLETTE STATE BANK.

1. APPEAL AND ERROR—DIRECTED VERDICT —PROPRIETY —EXAM-
   INATION OF EVIDENCE.
   The rule that on error to a judgment on a directed verdict this
   court will read the testimony most favorably to ·appellant
   does not apply where the position of counsel for appellant
   was that the court below should dispose of the case.

2. BANKS AND BANKING—CERTIFICATES OF DEPOSIT—LIABILITY—
   DELIVERY TO CASHIER.
   Where defendant bank, through its cashier, received from
   plaintiff certain certificates of deposit issued by it, for which
   he gave receipt and agreed to pay on demand, and on demand
   the bank refused to pay on the ground that the cashier had
   canceled the certificates and absconded with the money,
   the bank was liable to plaintiff irrespective of whether he in-
   dorsed the certificates at the time of their surrender.

Error to Sanilac; Beach, J. Submitted October 18,
1907. (Docket No. 103.) Decided December 30, 1907.

Assumpsit by Josiah Griffin against the Marlette State
Bank for money had and received. There was judgment
for plaintiff on a verdict directed by the court, and de-
fendant brings error. Affirmed.

*Phillips & Jenks*, for appellant.

*C. F. Gates*, for appellee.

Plaintiff declared upon the common counts in assump-
sit and in his bill of particulars he stated his claim to be
money deposited with the defendant for which two cer-
tain certificates of deposit were received,—

''By the terms whereof said defendant was to repay
the amount thereof, to wit: Six. hundred dollars with
the interest thereon to the plaintiff or his order upon the

return of said certificates, which certificates were duly returned to the defendant on to wit the fifth day of October, 1903, $600.

"To amount due plaintiff from the defendant upon the surrender of two certificates of deposit, $600, and interest thereon.

"To money deposited with the defendant by plaintiff, $600."

With the plea of the general issue the defendant bank gave notice that it would show that, if the defendant was at any time indebted to plaintiff, the indebtedness had been fully paid and satisfied. Being holder and owner of two certificates of deposit for $300 each, issued to him by defendant, plaintiff, on October 5, 1903, about to go to California, and wishing to arrange for obtaining money there in case he had use for it, left the certificates with the cashier of the bank. He denies that he indorsed them. He did take a receipt for them, and for a note given by his son, signed by C. L. Messer, the cashier, who did not, in signing it, designate himself as cashier. Plaintiff's version of the arrangement is:

"I will leave the deposits here in the bank with you, and if I get strapped or need money when I am out there, you will understand sending me this money better than I do. I will write to my son James first, and he will come in and see you, and you can send me this money. I will leave this receipt with my son James and if I want money I will write to him."

Plaintiff returned in about two months, not having called for any money. He called at the bank for and received the note. He did not call for the certificates of deposit, nor, at the time, see the cashier. It is a reasonable, and perhaps a necessary, inference from this record that the cashier, Messer, on or about April 7, 1904, absconded, and that before leaving he took the money represented by these certificates, stamped them with the stamp of the bank "Paid April 5, 1904. Marlette State Bank, Marlette, Mich.," and filed them with other canceled certifi-

cates. When produced by the bank, they bore the indorsement of the plaintiff. Later, plaintiff took his receipt to the bank where it was exhibited to the bank officers, who denied any liability on the part of the bank and informed plaintiff that the certificates were paid and canceled. Under date March 10, 1905, a proof of claim, apparently made, signed, and verified by plaintiff, was presented in the district court of the United States for the eastern district of Michigan, in bankruptcy, in the matter of Clarence L. Messer, a bankrupt. The demand is therein stated to be:

"Money had and received by said Clarence L. Messer in accordance with the terms of receipt, a copy of which is hereto attached; that no part of said debt has been paid, and that there are no set-offs or counterclaims to the same; that no note has been received for said account, nor has any judgment been entered thereon except as stated above, and that deponent has not, nor has any person by his order, or to his knowledge or belief, for his use, had or received any manner of security for the said debt whatever."

Plaintiff denied his signature to the proof of claim, denied his appearance before the notary, denied that he had ever to his knowledge filed such a claim. He also denied his signature to a power of attorney, dated January 13, 1906, given to C. F. Gates, Esq., to represent him in the bankruptcy proceedings, although it is clear that he did sign it and upon the advice of Mr. Gates withdrew his demand. Under the last-mentioned date, he withdrew his claim in the bankruptcy proceedings and in a separate instrument revoked any and all powers to attorneys except the one to Mr. Gates. The testimony having been concluded, defendant presented certain requests to charge and asked that a verdict be directed upon the grounds set out in the requests, and stated:

"The principal ground is that the plaintiff cannot maintain the action in the form in which he has commenced it. The declaration in the case is on the common counts in assumpsit, and one ground on which I ask the direction

is that there is a variance between the pleadings and proofs. The action of assumpsit may be maintained for money had and received, if there was no written evidence existing which contained a condition. When that money was placed in the bank, it required as a condition of repayment that the certificates be returned properly indorsed. Consequently this plaintiff is in no position to maintain an action until he indorsed the certificates and demands payment. This he never did. Assuming that the officer of the bank had authority, and assuming, for the purpose of argument, that he was within the scope of his authority, plaintiff's remedy if he had any, was to demand possession of the certificates. This he never did, and he cannot sue and recover with the certificates in their possession without any demand. After he had made demand for possession of the certificates and been refused, he might then maintain an action for their value, but the bank is entitled to presentation of the certificates with his indorsement on the back before he can recover payment. For these reasons we are entitled to a verdict in the case."

Thereupon the following colloquy between court and counsel occurred:

"*The Court:* I think the practical question in this case is whether the plaintiff truly indorsed the certificates or not. If he did indorse them, the bank is protected in the payment and authorized to pay them.

"*Mr. Gates* (attorney for plaintiff): When a man gives to the bank cashier indorsed paper, charging it to an open account, isn't the bank held?

"*The Court:* That is not your claim.

"*Mr. Gates:* That is exactly our claim, and we make it in the declaration and bill of particulars, we surrendered it to the bank. The whole theory of our case is that on the 5th of October, 1903, we surrendered these certificates to the bank in that shape; that the bank was satisfied, that is the charge in the bill of particulars.

"*The Court:* I will say, Mr. Phillips (attorney for the defendant), that under the testimony the transaction was a mere depositing of these certificates with Mr. Messer as custodian. The other question is this: These certificates were issued to this plaintiff and his claim is that he never received the money upon them. The claim of the bank is that they had his indorsement and that the bank had paid them. There is a sharp issue.

"*Mr. Phillips:* The bank does not claim that they ever paid Mr. Griffin any money on them. There is no claim that it did. Defendant claims that by plaintiff's indorsement he put it in the power of anybody to draw it and the bank is protected by the indorsement.

" *The Court:* That is about my position.

" *Mr. Phillips:* I understand if that is found to be a true indorsement, there is no liability on the part of the defendant.

" *The Court:* It would come pretty near that."

Counsel for the plaintiff made his opening argument to the jury and was followed by counsel for the defendant who, in the course of his argument, said:

"As I understand the position of the court in this case, the one principal question for you to determine is whether those are the signatures of the old gentleman on these two certificates of deposit, and the determination of that question in the affirmative, that they are his signatures, practically warrants a verdict for the defendant in this case.

" *The Court:* Mr. Phillips, that last statement as to the position of the court, I think you want to add to that further that if the jury should find that the paper was actually paid,—

"*Mr. Phillips:* I would like to have the court explain that, because it would make a material difference in my argument. I would like the court's opinion on it.

"*The Court:* In the ordinary course of banking business, the indorsement of a certificate of that kind and passing it to the cashier, or the indorsement of such paper and putting it afloat would deprive the payee of any rights upon that certificate.

"*Mr. Phillips:* That is substantially the same thing, your honor.

"*The Court:* But that, coupled with the testimony of the plaintiff in this case, that indorsement would *not* be conclusive, but the jury must find as a fact from that indorsement and anything connected with the paper, and the testimony pertaining to it, that it was paid.

"*Mr. Phillips:* Does that mean paid to the plaintiff?

"*The Court:* Paid to the plaintiff.

"*Mr. Phillips:* Your honor, under that state of facts, might practically direct a verdict for the plaintiff in this case. We have not made any claim that the plaintiff got

that money and have made no proof and are not in position to prove that. This would destroy the effect of the other proposition which your honor makes. There is no proof in the case that the plaintiff got the money. The position we assume is this: Under the proofs in this case, assuming that the indorsements on the back of the certificates are in the handwriting of plaintiff, under his own testimony he put Mr. Messer in a position where he could take advantage of the bank, and it is immaterial whether Messer took the money himself and put in those certificates. If your honor is of a different mind, there is no question left for the jury to determine. My contention is that when he indorsed the certificates under the circumstances that he states and gave them to Messer, if Messer abstracted the money from the bank and paid these certificates, that there was a sufficient payment so far as this plaintiff is concerned, and he cannot recover.

"*The Court:* That involves the other question, whether he received them as an individual or cashier.

"*Mr. Phillips:* That is a question for your honor's determination, it strikes me.

"*The Court:* It is also a question of fact.

"*Mr. Phillips:* Upon what is there a dispute? The circumstances of delivery to Mr. Messer are all shown by the plaintiff's testimony. Upon that there is no dispute, no contradiction of it.

"*The Court:* I had coupled my ideas that I had expressed here with a contrary proposition growing out of the testimony here, the plaintiff's denying that signature.

"*Mr. Phillips:* Yes, I admit that, your honor, and that was the proposition I state. If it is found as a fact by this jury that he did sign those certificates, and those are his signatures, then, if the court please, if your honor thinks we must then go ahead and show that he actually got the money on them, your honor directs a verdict for the plaintiff in the case.

"*The Court:* Coupled with the further fact, if found, as to whether he held them as cashier or as a simple custodian of valuable papers.

"*Mr. Phillips:* There is no dispute of fact there. That is the proposition I made to your honor before. There is no dispute as to the manner in which that delivery was made. That testimony all comes from the plaintiff.

"*The Court:* Yes, but the other fact is there as to whether that was his signature when he indorsed them.

"*Mr. Phillips:* That is an outside proposition.

"*The Court:* No, that is coupled right with the question of fact as to whether he received them as cashier or as an individual.

"*Mr. Phillips:* Let us assume that it was admitted that the signature on the back of the certificates was the signature of the plaintiff.

"*The Court:* Yes.

"*Mr. Phillips:* What question is there left for the jury under your honor's view? The question of the capacity in which Messer received those certificates is not in dispute, so that it becomes the duty of the court, as I understand it, to dispose of that as a matter of law. We have asked for a direction and are entitled to it on that proposition.

"*The Court:* Even if it is found as a fact or admitted that that signature is a true signature made at the time of the delivery of the papers to Mr. Messer, you cannot separate him as an individual from cashier of the bank. It was his duty either to pay the cash, or give credit.

"*Mr. Phillips:* I don't know as I get that proposition.

"*The Court:* Why if it is admitted or found as a fact that plaintiff made that signature at the time of delivery of those certificates to Mr. Messer, then it was the plain duty of Mr. Messer, and it was his duty as cashier, to pay cash for them, or give credit on the books of the bank for the amount.

"*Mr. Phillips:* If he didn't do either one, the plaintiff is entitled to recover?

"*The Court:* Yes.

"*Mr. Phillips:* I take an exception to that statement and I do not care to argue the case further.

"*The Court:* Well, the verdict will be directed."

OSTRANDER, J. (*after stating the facts*). Ordinarily, when a verdict is directed by the trial court, an appeal is taken and it is necessary for this court to examine the testimony in the case, it will be read most favorably to the appellant. The rule cannot be applied in this case, because it appears that the position assumed by counsel for appellant was that in any event the court should dispose of the case. But one construction can be reasonably given to the language of counsel when considered with the undisputed evidence and the pleadings. It is an ad-

mission that the bank, through its cashier, received from plaintiff the evidences of its indebtedness to him, did not then pay him the money, agreed to thereafter pay it to him upon his demand and when demand was made, by the production of the cashier's receipt, refused payment upon the ground that the money had been paid upon the plaintiff's order. The only matter of defense set out with the plea is payment. Assuming that plaintiff indorsed the certificates and surrendered them to the bank, receiving in lieu of them the cashier's receipt, it is clear that the bank has not paid him and has refused payment. If he did not indorse them, it has not paid him. It cannot be said, as matter of law, that the court below was in error, and the judgment is, therefore, affirmed.

GRANT, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.